865 F.2d 1267
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Georgena R. BOGGS and Walter Boggs, Plaintiffs-Appellants,
v.
DuPONT PHARMACEUTICALS, E.I. DuPont DeNemours & Co., Inc.,
Defendants- Appellees.
 No. 88-3135.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1989.
 
 Before NELSON and BOGGS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellants Georgena and Walter Boggs sued for damages allegedly caused by Mrs. Boggs's taking of Coumadin, an anti-coagulant drug. They now appeal the district court's grant of summary judgment to the defendants, the DuPont Pharmaceuticals and E.I. DuPont corporations (DuPont). The plaintiffs also appeal the lower court's denial of their motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure.[1] We affirm.
 
 
 2
 * This appeal arose from a products liability action initiated by the plaintiffs against DuPont in June 1986. The plaintiffs allege that Mrs. Boggs suffered damages due to the negligence of DuPont when she took the drug Coumadin while being treated in St. Luke's Hospital in Maumee, Ohio. Specifically, the plaintiffs allege that DuPont inadequately warned physicians of the dangerous side effects that are sometimes caused by Coumadin.
 
 
 3
 Boggs entered St. Luke's on May 31, 1984, suffering from recurrent deep thrombosis of the right leg. She was treated with the drug Heparin, an anti-coagulant, until June 12, when her physician switched her to Coumadin. On June 15, after her clotting time was found to be too slow, she was taken off the Coumadin. The next day, Boggs began to develop bruises over her lower and upper extremities, accompanied by small petechial areas.[2] As a result of these complications, Boggs was forced to undergo additional treatment, including surgery, and was not discharged until September 1, 1984.
 
 
 4
 Coumadin has been manufactured and marketed by DuPont since 1954. It is an anti-coagulant drug, meaning that it is used to prevent blood from clotting. By federal law, it is a prescription drug, used mostly when blood is likely to clot after surgery and in patients who have a history of circulatory problems, including blood clots. Each package of Coumadin includes an insert which contains information about the use of the product, as well as warnings about the potential side effects of the drug.
 
 
 5
 In June 1984, when the drug was administered to Boggs, the insert mentioned that one of the possible adverse reactions to the drug was necrosis of the skin. The insert read: "Side effects other than hemorrhage are infrequent and consist of alopecia, urticaria, dermatitis, fever, nausea, diarrhea, abdominal cramping, a syndrome called 'purple toes,' hypersensitivity reactions and a reaction consisting of hemorrhagic infarction and necrosis of the skin."
 
 
 6
 In 1986, however, DuPont revised the insert.[3] The transmittal letter accompanying the insert highlighted the increased emphasis put on warning doctors of the possibility of severe necrosis. The letter stated that "While hemmorhage has long been recognized as the principal complication of COUMADIN therapy, recent reports in the medical literature provide insight into another, less frequent, but still serious, condition associated with oral anticoagulant therapy, namely necrosis and/or gangrene of the skin and other tissues. The enclosed revised package insert, which has been highlighted for your convenience, emphasizes this subject and directs your attention to factors predisposing to the development of necrosis." The new insert read: "The most serious risks associated with anti-coagulant therapy with sodium warfarin [Coumadin] are hemorrhage in any tissue or organ and, less frequently, necrosis and/or gangrene of skin and other tissues.... Hemorrhage and necrosis have in some cases been reported to result in death or permanent disability. Necrosis appears to be associated with local thrombosis and usually appears within a few days of the start of anticoagulant therapy."
 
 
 7
 In October 1987, DuPont moved for summary judgment. The motion was accompanied by an affidavit from a DuPont official stating that the package insert warned of the danger of necrosis. The parties agreed to two stipulations granting the plaintiffs extensions of time for submitting their response to DuPont's motion. After the second extension, the plaintiffs were required to respond by November 30, 1987. On November 30, 1987, they mailed to the court a motion for a continuance or, in the alternative, for dismissal of the claim without prejudice. This motion was accompanied by an affidavit by the plaintiffs' counsel outlining the reasons for the motion. Counsel stated that the continuance was needed because he was unable to procure the records of the Chelos case from the Illinois court. Counsel also contended that he was unable to procure these records because they were sealed at the request of DuPont.
 
 
 8
 On December 2, 1987, the district court granted DuPont's motion for summary judgment and dismissed the case. On December 11, 1987, the plaintiffs moved, pursuant to Rule 60(b), to vacate the judgment of the court or, in the alternative, to alter or amend that judgment, pursuant to Rule 59(e). In response to this motion, DuPont submitted an affidavit by Boggs's treating physician stating that the original DuPont insert fully described and warned him of the risk of necrosis posed by Coumadin. On January 11, 1988, the district court denied the plaintiffs' motions. The Boggses appealed.
 
 II
 
 9
 Summary judgment is appropriate if the pleadings, affidavits, and other submissions show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). In order for the non-moving party to prevail, he must do more than rest on his pleadings; he must show, through specific facts, that there is sufficient evidence favoring his case for a jury to return a verdict in his favor. Id. at 249, 250.
 
 
 10
 In their complaint, the plaintiffs contend that DuPont's first package insert was an inadequate warning of the danger of necrosis of the skin following the use of Coumadin. In order to prevail on an inadequate warning claim, a plaintiff must show that (1) the lack of adequate warnings was a proximate cause of the plaintiff's ingestion of the drug and (2) ingestion of the drug was a proximate cause of the plaintiff's injury. Seley v. G.D. Searle & Co., 423 N.E.2d 831, 838 (Ohio 1981). As both parties agree that the drug caused Boggs's injuries, the dispute focuses on the extent inadequate warnings caused the injuries.
 
 
 11
 The plaintiffs argue that the severity of Boggs's reaction to the drug was much greater than that described in the insert and that had her doctor known of the severity of the possible side effects he would not have prescribed the drug. However, the plaintiffs have not submitted any evidence in support of these contentions. The plaintiffs cannot withstand DuPont's motion for summary judgment without demonstrating through specific evidence that the jury could find in their favor. Anderson, 477 U.S. at 249, 250.
 
 
 12
 In addition, DuPont's affidavits cast severe doubt on any possible claim by Boggs. DuPont's first affidavit was submitted by its Professional Affairs manager, H. Tim McCurdy. McCurdy stated that the original package insert adequately warned physicians of the dangers posed by Coumadin treatment. More to the point is the affidavit submitted by Boggs's treating physician, Dr. James Gorman. While this affidavit was not submitted with DuPont's motion for summary judgment, it was submitted with DuPont's response to the plaintiffs' post-judgment motions and is part of the record on appeal. Gorman stated that the insert fully informed him of and described the risks of necrosis. He concluded that he decided to use Coumadin because the risks of not administering an anti-coagulant were greater than the risk of harmful side effects, such as necrosis. This affidavit demonstrates that it is unlikely that Boggs's treatment would have been any different if a different warning were issued by the defendant. Given the lack of any evidence in favor of the plaintiffs, we must uphold the decision of the court below granting DuPont summary judgment.
 
 III
 
 13
 A reviewing court should not reverse the district court's decision on a Rule 59(e) motion to alter or amend a judgment unless the trial court abused its discretion. Huff v. Metropolitan Life Ins. Co., 675 F.2d 119, 122 (6th Cir.1982).
 
 
 14
 The plaintiffs argue that the court below abused its discretion by not altering its judgment to deny DuPont's motion for summary judgment and grant the plaintiffs' motion to dismiss the complaint without prejudice under Rule 41(b) of the Federal Rules of Civil Procedure. The plaintiffs' argument is, in essence, that their failure to respond should be excused because they could not obtain access to the records of the Illinois case. They contend that these records were crucial to their response and that they were inaccessible because of the actions of DuPont.
 
 
 15
 In support of this argument, plaintiffs' counsel filed an affidavit stating that he, due to other commitments, could not go to Chicago (where the Illinois case was tried) until November 24, 1987, less than a week before the plaintiffs' response was due. Plaintiffs' counsel was assured, he claims, by local counsel that he would have no problem obtaining the records. Only when he arrived in Chicago was he told that the records were sealed. Counsel made clear in his affidavit that he intended to file motions in Illinois to have the impoundment order lifted. Once the motion was lifted, he could then respond to DuPont's motion for summary judgment, or he could make other arrangements to obtain the evidentiary materials needed for a response.
 
 
 16
 We find, however, that the plaintiffs' failure to respond may not be excused because it was caused by their lack of diligence in pursuing their claim. While plaintiffs' counsel may very well have been busy, the court gave him every opportunity to prepare his case by granting two extensions of time with which to respond to DuPont's motion. As the district court pointed out, the plaintiffs accomplished no discovery before the response was due, almost one and a half years since the claim was filed. As to the Illinois records, the order preventing the plaintiffs from obtaining the records was entered in 1981, about six years before plaintiffs' counsel sought the records. Under the circumstances, the plaintiffs had no right to assume their motion for a continuance would be granted, thus forgiving their obligation to respond. We therefore hold that the district court was justified in denying the plaintiffs' motion to alter or amend judgment.
 
 
 17
 We AFFIRM the decision of the court below.
 
 
 
 [1]
 At the same time they made their Rule 59(e) motion, the plaintiffs also moved to vacate the judgment under Rule 60(b) of the Federal Rules of Civil Procedure. The district court denied the motion, and the plaintiffs seek review of that decision in this court. However, a Rule 60(b) motion cannot be made until a decision is final. Until the district court ruled on the plaintiffs' Rule 59(e) motion, there was no final judgment. Thus, their Rule 60(b) motion was premature and will not be reviewed by this court
 
 
 [2]
 Petechial area are spots appearing on the skin that are caused by the escape of blood into the tissue underneath the skin
 
 
 [3]
 Boggs contends that the insert was revised because of the March 1986 jury verdict returned in a case tried in an Illinois state court. That case, Chelos v. Endo Laboratories, Inc., involved a plaintiff who suffered necrosis of the skin after the administering of Coumadin. The plaintiff was awarded compensatory and punitive damages amounting to $39,225,240